## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| The Website, Inc., | : |
| Plaintiff, | : |
| v. | : Civil Action No.: |
| Dot Earth Inc., | : **JURY TRIAL DEMANDED** |
| Defendant. | : |

## COMPLAINT

Plaintiff, The Website, Inc. ("The Website"), by and through its undersigned attorneys brings this complaint against Dot Earth, Inc. ("Dot Earth"), for trademark infringement and unfair competition in violation of federal law, and alleges as follows:

## PARTIES

1. Plaintiff, The Website, is a Nevada corporation with a place of business at 101 Lombard Street, Suite B, Philadelphia, PA 19147. The Website is the owner of the intellectual property at issue in this case.

2. Defendant, Dot Earth, is a Delaware corporation with a place of business at 3450 Sacramento Street, #722, San Francisco, CA 94118.

## JURISDICTION AND VENUE

3. This action arises under the Acts of Congress under the Lanham Act, Title 15 U.S.C. § 1051, *et seq.*, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law.

4. This court has original jurisdiction over the claims brought under federal law

pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

5. This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

6. This Court may exercise personal jurisdiction over Dot Earth as Dot Earth is incorporated in Delaware, resides in this District and regularly conducts business in this District. As such, Dot Earth should reasonably expect that its activities might have consequences herein.

7. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c).

## BACKGROUND AS TO THE WEBSITE'S BUSINESS AND ITS INTELLECTUAL PROPERTY

8. Established in 1999, The Website is a well-known website and domain name registration company that provides website services to its customers throughout the United States, including, but not limited to, maintaining websites for others, domain name registrations, providing access to a global computer information network for the transfer and dissemination of wide range of information, and providing a website featuring environmental information about climate change, bio-diversity, conservation, and other information on protecting the environment (the aforementioned services shall collectively be referred to herein as the "Website Services").

9. The Website has adopted and continuously and exclusively used numerous trademarks comprising "DOTEARTH" and/or ".EARTH" and owns numerous U.S. trademark registrations comprising "DOTEARTH" and/or ".EARTH" for use in connection with the Website Services (collectively, the "DOTEARTH® Marks"), including its .EARTH® and DOTEARTH® registrations.

10. On February 2, 2000, The Website filed an application for registration of the trademark DOTEARTH® in the United States Patent and Trademark Office on the Principal Register under the Lanham Act, 15 U.S.C. § 1051 et seq. This application was assigned Serial No.

2

75/908,889 and covers the use of this mark in connection with "Providing multiple-access to a global computer information network for the transfer and dissemination of a wide range of information" and "maintaining web sites for others; domain name registrations." The date of first use of the DOTEARTH® mark is at least as early as December 1, 1999. This application was allowed by the Patent and Trademark Office and issued as Registration No. 2,762,106 on September 9, 2003. The registration has acquired incontestable status with the approval of its Section 15 Declaration. This registration is active and valid.

11. On August 7, 2008, The Website filed an application for registration of the mark DOTEARTH® in the United States Patent and Trademark Office on the Principal Register under the Lanham Act, 15 U.S.C. § 1051 et seq. This application was assigned Serial No. 77/541,242 and covers the use of this mark in connection with "providing a web-site featuring environmental information about climate change, bio-diversity, conservation, and other information on protecting the environment; providing a web site featuring information about global warming and its effect on nature and the environment; providing technological and scientific information about environmentally-conscious and green innovations, products and services." The date of first use of the DOTEARTH® mark is at least as early as July 10, 2009. This application was allowed by the Patent and Trademark Office and issued as Registration No. 3,711,033 on November 17, 2009. The registration has acquired incontestable status with the approval of its Section 15 Declaration. This registration is active and valid.

12. On August 7, 2008, The Website filed an application for registration of the mark .EARTH® in the United States Patent and Trademark Office on the Supplemental Register under the Lanham Act, 15 U.S.C. § 1051 et seq. This application was assigned Serial No. 77/541,619 and covers the use of this mark in connection with "maintaining web sites for others; providing a

web-site featuring environmental information about climate change, bio-diversity, conservation, and other environmental information focused on protecting the environment; providing a web site featuring information about global warming and its effect on nature and the environment; providing technological and scientific information about environmentally-conscious and green innovations, products and services" and "domain name registration services excluding the registration of domain names with the top-level domain extension .EARTH." The date of first use of the .EARTH® mark is at least as early as July 10, 2009. This application was allowed by the Patent and Trademark Office and issued as Registration No. 3,726,830 on December 15, 2009. This registration is active and valid

13. The Website's DOTEARTH® Marks are strong and inherently distinctive. Since 1999, The Website has expanded its use of and registrations for marks comprising "DOTEARTH" and/or ".EARTH", and the DOTEARTH® Marks have developed invaluable goodwill and reputation within the website and domain registration industries as a designator of source of the Website Services.

14. The Website's DOTEARTH® Marks have become well-known throughout the website and domain registration industries. Through its widespread, continuous, and exclusive use of the DOTEARTH® Marks to identify the Website Services and The Website as its source, The Website owns valid and subsisting federal statutory and common law rights in the DOTEARTH® Marks.

15. The Website has expended significant time, money, and resources marketing, advertising, and promoting its services under the DOTEARTH® Marks.

16. The market success of the Website Services offered under the DOTEARTH® Marks has been extraordinary, and the relevant public has come to rely upon and recognize the

Website Services in connection with The Website's DOTEARTH® Marks.

17. The Website engages in significant efforts to enforce its intellectual property rights and to defend its DOTEARTH® Marks against infringers and potential infringers.

18. The Website has notified Dot Earth of The Website's DOTEARTH® Marks and requested that Dot Earth withdraw, amend, and/or cease use of its DOT EARTH Designations (defined below) and/or any additional designations that are confusingly similar to The Website's DOTEARTH® Marks.

### BACKGROUND AS TO DOT EARTH'S UNLAWFUL CONDUCT

19. Dot Earth is operating under the business name DOT EARTH INC. and is using DOT EARTH and .ERTH (the "DOT EARTH Designations") in United States commerce in connection with identical, or highly related, services to the Website Services, namely providing a metaverse web hosting platform for discovery, navigation, and technical infrastructure for decentralized applications, games, ecommerce and graphical user experiences.

20. Dot Earth established the domain ERTH.XYZ, in which it advertises the DOT EARTH Designations in connection with its web hosting and website services.

21. On August 10, 2022, Dot Earth applied for U.S. Trademark Application Serial No. 97/542,782 for .ERTH for "providing a metaverse web hosting platform for discovery, navigation, and technical infrastructure for decentralized applications, games, ecommerce and graphical user experiences" (the ".ERTH Application"). The .ERTH Application was filed on an intent to use basis and is currently pending.

22. The DOT EARTH Designations are confusingly similar in sound, appearance, and overall commercial impression to The Website's DOTEARTH® Marks.

23. Dot Earth offers identical, or highly related, website services to those The Website

5

offers in connection with its DOTEARTH® Marks, and in the same or similar channels of trade.

24. The Website recently became aware of Dot Earth's use of the DOT EARTH Designations and the .ERTH Application. On February 1, 2024, The Website sent Dot Earth a cease and desist letter notifying Dot Earth of The Website's DOTEARTH® Marks, the identical Website Services, and objecting to Dot Earth's use of the DOT EARTH Designations and the .ERTH Application. The Website requested that Dot Earth: (1) immediately cease all use of the DOT EARTH Designations and any confusingly similar variations thereof in the United States; (2) withdraw any pending trademark applications for the mark .ERTH, including the pending .ERTH Application; (3) refrain from filing any future United States state or federal trademark applications for marks comprising the DOTEARTH Designations, or similar variations thereof; and (4) refrain from otherwise infringing upon The Website's intellectual property rights or syphoning off of its goodwill in its DOTEARTH® Marks (or any other trademarks, service marks, domain names, or trade names owned by The Website).

25. Dot Earth sent a letter in response on February 20, 2024, refusing to comply with The Website's demands.

26. The Website, through its counsel, responded to Dot Earth's February 20, 2024 letter on March 1, 2024, reiterating the similarities in sight, sound, meaning, and overall commercial impression between the DOTEARTH® Marks and DOT EARTH Designations as well as the direct overlap in services offered under each. The Website also reiterated its demands as set forth in its original letter.

27. In addition, on January 19, 2024, Dot Earth received a final office action refusal from the United States Patent and Trademark Office for the .ERTH Application on the basis of a likelihood of confusion with the DOTEARTH® Marks.

28. Throughout the months of negotiation, Dot Earth's counsel consistently reiterated Dot Earth's unwillingness to alter its name or otherwise refrain from using the DOT EARTH Designations.

29. In light of The Website's use of DOTEARTH® dating back to at least as early as 1999, use of .EARTH® dating back to at least as early as 2009, and its federal registrations, The Website's DOTEARTH® Marks have priority over Dot Earth's DOT EARTH Designations.

30. The Website, directly and through counsel, on multiple occasions, communicated with Dot Earth and its counsel regarding the DOT EARTH Designations. During these communications, The Website clearly put Dot Earth on notice of The Website's longstanding rights in its DOTEARTH® Marks and requested the withdrawal, amendment, and/or cessation of use of the DOT EARTH Designations on the basis that the DOT EARTH Designations are likely to be confused with The Website's DOTEARTH® Marks when used in connection with identical, or highly related, web hosting services.

31. By refusing to rename its business, and by continuing to use the DOT EARTH Designations, Dot Earth has adopted and is using a highly similar variation of The Website's DOTEARTH® Marks with the intent to trade off the enormous goodwill that The Website has earned in its DOTEARTH® Marks and to deceive and confuse the public into believing that the services marketed under the DOT EARTH Designations are sponsored by, authorized by, associated with and/or originate from The Website when they in fact do not.

32. Despite notice of The Website's long-standing intellectual property rights in the DOTEARTH® Marks, Dot Earth has yet to discontinue its use of the DOT EARTH Designations and amend or withdraw the .ERTH Application as requested by The Website.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

33. The Website repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

34. The Website's DOTEARTH® Marks are federally registered and, as such, the corresponding registrations are evidence of The Website's exclusive right to use the DOTEARTH® Marks in connection with the Website Services. 15 U.S.C. § 1115.

35. Further, the DOTEARTH® Marks have all acquired incontestable status. Thus, the registrations for the DOTEARTH® Marks shall be conclusive evidence of the validity of the registered marks, of The Website's ownership of the marks, and of The Website's exclusive right to use the registered marks in commerce in connection with the website and domain registration services specified in the affidavits filed under the provisions of §1065 or the renewal applications filed under the provisions of § 1059. 15 U.S.C. §1115.

36. The DOTEARTH® Marks are inherently distinctive to both the consuming public and within the website and domain registration industries for the Website Services.

37. The Website's well-known DOTEARTH® Marks and the DOT EARTH Designations are similar with respect to sound, appearance, meaning, and create the same overall commercial impression.

38. The DOTEARTH® Marks and the DOT EARTH Designations both begin with the leading term "DOT" or "." and followed by the term "EARTH" or "ERTH."

39. There are no existing U.S. federally registered trademarks for similar services that contain "DOT EARTH" or ".EARTH" besides the existing DOTEARTH® Marks.

40. The website services offered by Dot Earth under the DOT EARTH Designations are identical, or highly related, to the website and domain registration services offered by The

Website under its DOTEARTH® Marks as Dot Earth's services include a specific type of web hosting service and hosting services consist of the provision of server space for other entities' websites and other content to reside. Providers of such services also commonly provide other website support services, such as the maintenance services which are also commonly provided by providers of domain name registration services, like those provided by The Website.

41. Use of the DOT EARTH Designations for such services will likely lead to confusion, mistake, or deception of the public within the meaning of Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) and would otherwise cause injury and damage to The Website's DOTEARTH® Marks, as well as its good will and reputation.

42. Dot Earth has infringed The Website's DOTEARTH® Marks in interstate commerce by various acts, including using the DOT EARTH Designations in association with the identical website services as the Website Services. This unauthorized use by Dot Earth constitutes infringement of The Website's existing DOTEARTH® Marks in violation of the Lanham Act, 15 U.S. C. § 1051 et seq., to the substantial and irreparable injury of the public and of The Website's DOTEARTH® Marks, business reputation, and goodwill.

43. The Website has not given consent to Dot Earth to use the DOT EARTH Designations or any other confusingly similar mark to the DOTEARTH® Marks.

44. Dot Earth's conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of The Website in its DOTEARTH® Marks and in its business, reputation, and goodwill. The Website's damages from the aforesaid unlawful actions of Dot Earth to the extent ascertainable, have not yet been determined.

45. By the forgoing actions, Dot Earth has clearly engaged in willful trademark infringement in violation of 15 U.S.C. § 1117.

46. The Website seeks attorney's fees and costs given the willful conduct of Dot Earth.

47. The Website seeks treble damages given the willful conduct of Dot Earth.

## COUNT II
## FEDERAL UNFAIR COMPETITION

48. The Website repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

49. The Website and Dot Earth are competitors and both offer identical web hosting services.

50. The Website's incontestable registrations for its DOTEARTH® Marks are strong and inherently distinctive. Since its original use of DOTEARTH® in 1999, The Website has expanded its use of "DOTEARTH" and ".EARTH" and the DOTEARTH® Marks have developed invaluable goodwill and reputation within the website and domain registration industries as a designator of source of the Website Services.

51. Long after The Website's adoption and use of its DOTEARTH® Marks in connection with the Website Services, Dot Earth adopted and began operating under and using the DOT EARTH Designations in connection with identical web hosting services.

52. Dot Earth's activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to The Websites' reputation and goodwill.

53. Dot Earth has unfairly competed with The Website's DOTEARTH® Marks in interstate commerce by various acts, including applying for the .ERTH Application that is likely to be confused with the DOTEARTH® Marks and using the DOT EARTH Designations in connection with identical, or highly related, web hosting services. This unauthorized use by Dot Earth constitutes unfair competition to the substantial and irreparable injury of the public and of

The Website's DOTEARTH® Marks, business reputation, and goodwill in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. The activities of Dot Earth complained of herein constitute willful and intentional tort, in derogation of The Website's rights. Acts of unfair competition commenced and have continued in spite of Dot Earth's knowledge that the use, registration, and application of the DOT EARTH Designations in connection with its web hosting services was and is in contravention of The Website's rights.

55. The Website has not given consent to Dot Earth to use the DOT EARTH Designations or any other confusingly similar mark to the DOTEARTH® Marks.

56. Dot Earth's conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of The Website in its DOTEARTH® Marks and in its business, reputation, and goodwill. The Website's damages from the aforesaid unlawful actions of Dot Earth to the extent ascertainable, have not yet been determined.

57. The Website seeks attorney's fees and costs given the willful conduct of Dot Earth.

58. The Website seeks punitive damages given the willful conduct of Dot Earth.

## PRAYER FOR RELIEF

**WHEREFORE**, The Website prays for relief against Dot Earth as follows:

1. That the Court preliminary and permanently enjoin and restrain Dot Earth, its officers, directors, agents, employees and all persons in active concert or participation with Dot Earth who receive actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

    A.    infringing or contributing to the infringement;

    B.    engaging in any acts or activities directly or indirectly calculated to infringe The Website's DOTEARTH® Marks;

11

        C.    using, selling, offering for sale, promoting, advertising, marketing or distributing services and/or products, advertisements or marketing materials that use the term "DOT EARTH" and ".ERTH" or any mark similar thereto;

        D.    using any other configuration or design that is confusingly similar to The Website's DOTEARTH® Marks; and

        E.    otherwise competing unfairly or deceptively with The Website in any manner whatsoever.

    2.    That the Court find that Dot Earth is infringing The Website's DOTEARTH® Marks and is competing unfairly with The Website.

    3.    That the Court Order Dot Earth to account for and pay to The Website the damages to which The Website is entitled as a consequence of the willful infringement of The Website's DOTEARTH® Marks.

    4.    That the Court Order Dot Earth to account for and to pay over to The Website all damages suffered by The Website as a result of Dot Earth's unfair competition.

    5.    That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of Dot Earth so as to prevent fraud on the Court and so as to ensure the capacity of Dot Earth to pay, and the prompt payment of, any judgment entered against Dot Earth in this action.

    6.    That the Court award The Website its compensatory, incidental, and consequential damages.

    7.    That the Court award The Website enhanced, treble, and/or punitive damages.

    8.    That the Court award The Website its reasonable attorney's fees and the costs of this action.

9. That the Court grant The Website such other further relief as is just and proper.

## DEMAND FOR JURY TRIAL

The Website demands a trial by jury on all triable issues of fact.

Dated: June 28, 2024

Respectfully submitted,

/s/ Kaan Ekiner
Kaan Ekiner (#5607)
**COZEN O'CONNOR**
1201 N. Market Street, Suite 1001
Wilmington, DE  19801
(302) 295-2046
kekiner@cozen.com

Camille M. Miller (*pro hac vice* to be filed)
Melanie A. Miller (*pro hac vice* to be filed)
Anna L. Pedraza (*pro hac vice* to be filed)
**COZEN O'CONNOR**
One Liberty Place, 1650 Market Street
Philadelphia, Pennsylvania  19103
(215) 665-2000
cmiller@cozen.com
mmiller@cozen.com
apedraza@cozen.com

*Attorneys for Plaintiff, The Website, Inc.*